**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Ladedra Manning,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>South Carolina Department of Juvenile Justice,<br><br>　　　　　Defendant. | Case No: 3:17-2669-CMC-PJG<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, by and through his undersigned counsel, and complaining of Defendant, would respectfully show unto the Court:

**PARTIES, JURISDICTION, AND VENUE**

1.　　Plaintiff is a citizen and resident of Richland County, South Carolina.

2.　　Defendant is a governmental entity of the State of South Carolina and has its principal place of business in Columbia, South Carolina.

3.　　This Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 (federal question).

4.　　Venue is proper in this division, as it is where which a substantial part of the events or omissions giving rise to the claim occurred and is where Defendant resides for purposes of venue.

5.　　Plaintiff began her employment with Defendant in August 2013.

6.　　In September 2015, Plaintiff began to be harassed by her supervisor, Ulysses Collins, whose sexual advances began promptly after Plaintiff began working for him.

1

7. Mr. Collins ultimately attempted to kiss Plaintiff after her grandmother's funeral, which was particularly traumatic given that her grandmother raised her and was the primary maternal figure in her life.

8. Plaintiff rebuffed the advances and advised her supervisor that she was not interested in him romantically.

9. She reported this behavior to Tameka Jones, her prior supervisor with Defendant, who advised her to put her complaint in writing but never followed up with Plaintiff, who feared retaliation.

10. Plaintiff approached her supervisor directly and advised him that he was harassing her during a particularly vulnerable time.

11. Mr. Collins claimed to be embarrassed by his behavior and said he would stop, though he continued to tell Plaintiff that she was "a very attractive lady" while issuing his apology.

12. The harassment stopped for two to three weeks before Mr. Collins began harassing her again by ignoring her, leering at her, making comments about her perfume, telling her how interested he was in her and how beautiful she was, and making other sexual comments on numerous occasions.

13. On December 23, 2015, Mr. Collins texted Plaintiff to advise her that he wanted to meet and have a "drink or something to eat."

14. On or about December 29, 2015, Plaintiff filed an internal complaint of sexual harassment with James Bryant, to whom Mr. Collins reported.

15. Mr. Bryant had previously advised Plaintiff that Mr. Collins had engaged in misconduct, including sexual harassment, at other locations and had been getting moved around within the agency without consequences.

16. This statement contributed to Plaintiff's fear of retaliation for reporting Mr. Collins.

17. Shortly after the complaint was sent, Plaintiff left her personal email up on the computer, and upon information and belief, Mr. Collins deleted the emails about the harassment.

18. This conduct was intimidating and inappropriate.

19. At the time Plaintiff filed the complaint, she was being treated for a known work-related injury prohibiting her from prolonged standing.

20. Defendant's Inspector General, Ray Cavanagh, and Director Sylvia Murray advised Plaintiff that she would have to be moved to work the security gate instead of working her own job.

21. Plaintiff advised Krista Emory, Interim Human Resources Director that the proposed reassignment made her feel like she was being punished for reporting the harassment, which was well-documented.

22. Ms. Emory apparently knew that this would be the case, as she responded, "That's what I wanted you to say."

23. Instead, Defendant moved Mr. Collins to the security gate, though there were numerous other assignments where Mr. Collins could have been placed (including paid administrative leave) during the investigation.

24. At the security gate, Mr. Collins was responsible for searching vehicles coming in and out of the facility, including employee vehicles.

3

25. As a result, Mr. Collins would stand by Ms. Manning's car in an intimidating manner while another employee was called over to search her vehicle.

26. On one occasion, he made her park her car outside of the gate because of a ziptie on her car that had been on the car for two years and was known prior to her filing the complaint.

27. During the time of the investigation, Plaintiff overheard Mr. Bryant, her then-supervisor, walked up on Mr. Bryant discussing her sexual harassment complaint with her coworkers.

28. The investigation took over a month, but on February 5, 2016, Compliance and Inspections Investigator Daniel Johnson found sufficient evidence to support Plaintiff's claim of sexual harassment.

29. Mr. Johnson advised Plaintiff that Mr. Cavanagh would be following up with her.

30. Thereafter, Plaintiff asked Mr. Bryant when Mr. Cavanagh would do so.

31. He responded in a hostile manner, "He is not going to talk to you!"

32. Mr. Bryant, with whom Plaintiff had previously had a good working relationship, began to speak to Plaintiff differently and angrily.

33. For example, she was suddenly denied overtime and would not even be paid for overtime she had already worked, even though she had been working the overtime for months without issue; others had done so without recourse.

34. Mr. Cavanagh finally met with Plaintiff two months following the complaint and almost a month following the closing of the investigation.

35. Mr. Bryant advised her that Mr. Collins was going to be cited for "inappropriate contact with an employee" and "interfering with a coworker," but neither of these were specific to sexual harassment to indicate that the personnel file would reflect the issue.

36. When Mr. Cavanagh finally met with Plaintiff on February 29, 2016, she told him that she got a nervous feeling every time she had to come through the gate under Mr. Collins' eyes.

37. Mr. Cavanagh acknowledged that it was not a good placement but stated that Mr. Collins would remain there nonetheless while he exhausted his administrative rights and procedures, which could take several more months.

38. In the meantime, Plaintiff continued to be subjected to false claims and hostile behavior by Mr. Bryant and others with knowledge of Plaintiff's complaint against Mr. Collins.

39. It was not until April 4, 2016, that Mr. Collins was finally terminated after months of Plaintiff's suffering, which ultimately resulted in medical leave to address counseling for the anxiety and stress caused by the harassment and retaliation.

40. Plaintiff timely opposed Defendant's acts with the South Carolina Human Affairs Commission by sworn complaint of April 6, 2016, and a signed Charge of Discrimination form on April 26, 2016, asserting claims of gender and disability discrimination and retaliation in contravention of Title VII of the Civil Rights Act of 1964, *as amended*, the South Carolina Human Affairs Law, and the Americans with Disabilities Act, *as amended*.

41. Plaintiff received her Notice of Right to Sue from the Equal Employment Opportunity Commission on August 7, 2017, and files this action within the statutory period.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Title VII of the Civil Rights Act of 1964 – Sexual Harassment)**

42. Plaintiff repeats and realleges the allegations above as if set forth fully verbatim herein.

43. Plaintiff, as a female, is a member of a protected class.

5

44. Plaintiff was subjected to unwelcome sexual advances and other conduct of a sexual nature by her supervisor.

45. The harassment was based on Plaintiff's sex and unreasonably interfered with Plaintiff's work performance in creating an intimidating, hostile, and offensive working environment that seriously affected Plaintiff's psychological well-being and conditions of employment.

46. Defendant knew or should have known of the harassment and failed to take prompt action.

47. As a direct and proximate result, Plaintiff is entitled to recover her actual and compensatory damages, attorney's fees, costs, and such other and further relief as deemed proper by this Court.

**AS AND FOR A SECOND CAUSE OF ACTION OR CAUSE OF ACTION IN THE ALTERNATIVE**
**(Title VII of the Civil Rights Act of 1964 – Retaliation)**

48. Plaintiff repeats and realleges the allegations above as if set forth fully verbatim herein.

49. Plaintiff engaged in protected activity under federal law in that she complained of conduct prohibited by Title VII of the Civil Rights Act of 1964.

50. Thereafter, Defendant subjected Plaintiff to adverse employment action in that it forced Plaintiff to go through intimidating security procedures daily, threatened with an undesirable move that would have caused physical harm, took issue with her light duty status, altered her compensation, treated her with hostility, made false accusations against her, interfered with her employment opportunities, and discussed her sexual harassment complaint with her coworkers, among other wrongful, retaliatory acts.

51. But for Plaintiff's complaints of sexual harassment, which constituted protected activity, she would not have been subjected to such retaliation.

52. Because of the retaliation, Plaintiff was forced to seek other employment.

53. As a direct and proximate result, Plaintiff is entitled to recover compensatory damages, back pay, front pay, attorney's fees, costs, and such other and further relief as deemed proper by this Court.

WHEREFORE, Plaintiff asks for damages in an amount to be determined at trial, for attorney fees and Court costs, and for such other and further relief as the Court deems just and proper.

**SARVIS LAW, LLC**

By: **s/Bryn C. Sarvis**
Bryn C. Sarvis (10478)
3424 Augusta Highway
Gilbert, SC 29054
bsarvis@sarvislaw.com
(803) 785-5525

*Attorney for Plaintiff*

Dated: October 4, 2017
Gilbert, South Carolina